## OKIE v. KELLY.

1. A sale to a *bona fide* purchaser for value by assignees for creditors, under a deed voidable for a defect apparent on its face, cannot be avoided by the insolvent trustee of the assignors, where the sale was made before an election by the trustee, to disaffirm the assignment.

2. The accounts of the voluntary assignees, which have been confirmed, and the money distributed, in which they charge themselves with the price of the sale, are evidence of the fact of the payment of the purchase-money, against the insolvent trustee.

3. The purchaser being a preferred creditor, an extinguishment of his preference to the extent of the purchase-money, to which he became entitled under a subsequent decree of the Court, is equivalent to actual payment.

CERTIFICATE from the Nisi Prius.

*Dec.* 13. Ejectment. The property in question was conveyed to John Knox and James Boggs, in 1830, as tenants in common, and both parties claimed under them. The plaintiffs claimed as insolvent trustees of Knox and Boggs, who were discharged by the Court October 19, 1837; but the trustees then appointed did not act, and the office remained vacant until May, 1842, when the plaintiff was appointed, and shortly afterwards commenced this action.

The defendant's title was as follows:—On the 10th May, 1837, Knox and Boggs, who, together with James A. Knox, had been partners in trade, executed a general assignment, with preferences, and stipulating for releases in favour of all the partners. This assignment was held to be voidable by creditors, because James A. Knox, one of the partners, did not join in the conveyance, and thereby pass his private estate.

In May, 1838, the premises were sold at auction by the volun-

tary assignee, and conveyed to the defendant. No notice or objection was stated by any one at the time of the sale. The deed contained a receipt for the purchase-money, which was proved to be a full price. And in the account filed by the assignees, they charged themselves with the amount received from this sale.

Prior to the assignment, Knox and Boggs had mortgaged the premises for $12,000 to one Baker, and for $6000 to the defendant. These mortgages were produced in evidence, and showed that they had been satisfied after the sale by the assignees to the defendant. After distributing the moneys collected among the preferred[*] creditors, of whom the defendant was one, receiving $40,801, the balance remaining in their hands was $563. This was carried into the second account, filed in June, 1840, in which they charged themselves with $48,050 collected, and took credit for $39,659 distributed. The third account, filed in October, 1840, resulted in a balance of $32,702. These accounts were confirmed, and all the moneys received were distributed under the decree of the Court prior to February, 1841.

The fourth account was filed by the assignees in July, 1841, and the funds then in hand, together with the remaining property which passed under the assignment, were handed over to the plaintiff as insolvent trustee, electing to avoid the assignment for the reason among others already alluded to—(see 9 W. & S. 157; 4 Barr, 448.)

The plaintiff also proved that the notice of the assignment published by the assignees stated that it had been made by the three partners.

COULTER, J., instructed the jury, that there was no actual fraud in the omission of one of the assignors to execute the assignment, which would preclude the defendant from claiming under that deed, and that the creditors permitting him to purchase without objection or notice, were debarred from now avoiding the purchase.

That the sale of the real estate was in part execution of the trust, and validated by the insolvent trustee receiving the balance remaining in the hands of the voluntary assignee.

*C. Fallon* and *J. M. Scott*, for plaintiffs in error.—The statute 13 Eliz. renders the assignment void *ab initio* at the election of creditors, and the defendant is not within the saving; for he is not a *bonâ fide* purchaser without notice. There is no evidence of payment of the purchase-money. The acknowledgments of the

assignees after our title accrued could not affect us, and the receipt is settled not to be evidence of the fact: 4 Watts, 361; 1 Whart. 431; 5 Barr, 151. It may well be that no money was paid, but a mere credit entered as for a payment on account of his preference. He had notice, moreover, of the defect, because he claims under this very deed: 2 Binn. 455; 16 S. & R. 338; 1 Stor. Eq. §§ 400, 395–9; 3 Watts, 233. There was therefore no necessity for notice to be given by the plaintiff: 7 Barr, 340; 2 Pa. Rep. 92; 3 Watts, 232; 6 Ib. 87; 4 Barr, 437. For the defect was one apparent on the recorded title: 3 Barr, 176. Nor was there any one who could give the notice, for a trustee had not been qualified.

Estoppel by silence only occurs where there has been a fraudulent concealment of title; here it was equally open and known to all: 2 Penn. 19; 2 Rawle, 89; 17 S. & R. 383; 7 Watts, 401; 5 Barr, 141; 1 Story Eq. § 386; 6 Barr, 132. As to the receipt by the plaintiff from the assignees, the Court fell into an error. It was not as claimants under the deed, but adversely by title paramount after this suit had been commenced: 9 W. & S. 453; 8 Ib. 36; 4 S. & R. 486; 3 Watts, 233. And further, there was no receipt of this money. It had all been distributed, nor would the amount received have been at all diminished, had this sale not been made; on the contrary, the property would have come to the insolvent trustee, and so much less would have been distributed among the preferred creditors. The affirmance of a contract must be by acts *eo intuitu*: 23 Maine, 517. The decisions in 9 W. & S. 156, 4 Barr, 431, and 7 Ib. 524, have only gone to the length of holding that the assignee is protected for his acts done up to the notice, by creditors, of an election to avoid the deed, but it never has been held that purchasers were also protected.

*E. K. Price* and *J. M. Read* (*Meredith* and *J. Sergeant* were with them).—In no case has a distinction been made as to the powers of assignees under voidable assignments between real and personal property, nor can any exist. If, therefore, sales of realty may at any time thereafter be avoided for such defect in the assignment, the same result must follow as to the sales of the stock in trade of the firm: and not only so, but every payment of a debt must be treated as a nullity, and the debtors compelled to pay again to the insolvent trustee. The case might be rested here, but the authorities clearly sustain the defendant's title, 1st, On the ground of the actual receipt of the money by one having but a voidable

2 E

title not yet avoided by election : 4 Binn. 42 ; 6 Price, 495 ; 6 Watts, 93 ; 1 Ashm. 212 ; 1 Rawle, 193.    2dly, By the fact that the price thus paid has been irrevocably distributed by a decree ·of a Court having competent jurisdiction, which binds all the world as a proceeding *in rem*, and consequently the creditors claiming adversely, who should have interfered there : 11 S. & R. 429 ; 4 W. C. C. R. 503 ; 1 Am. L. J. 200 ; 4 S. C. R. 460 ; 5 John. 102 ; 7 Barr, 526.    3dly, The rule that protects the assignee for all acts done before the election to avoid the deed, necessarily protects also those who dealt with him : 4 Paig. 23, 42 ; 5 W. & S. 100 ; 9 Ib. 176 ; 4 Barr, 430, 274 ; 7 Ib. 500 ; 4 Ib. 453.· Though not necessary for the defence, the receipt of the balance of the last account was an express confirmation, by estoppel, of the acts of the assignee : 1 Rawle, 171 ; 8· Watts, 430 ; 6 W. & S. 504 ; 7 Ib. 125.    That this trustee could thus confirm those acts is settled by 2 Barr, 479 ; 5 Ib. 168.

*Dec.* 24.    GIBSON, C. J.—The statute ˙of 13 Elizabeth avoids fraudulent transfers of a debtor's property only so far as they stand in the way of creditors or their representatives in pursuit of it for their debts by action, judgment, and execution.    A creditor, an executor or administrator of the fraudulent debtor, or his assignee .in bankruptcy or insolvency, representing creditors—but not a subsequent assignee for the benefit of creditors, representing as he does the person of the debtor—may proceed by action to judgment and execution of the property in the hands of the assignee, as if it had not passed by the fraudulent assignment.    The reason of the distinction, and it was not perceived in Englebert *v.* Blanjot, is that a subsequent assignee also for the benefit of creditors, stands in the place of the assignor, and is bound where he would be bound ; and it is settled that a fraudulent conveyance concludes the parties to it.    But creditors, or their legal representatives, may treat it as a nullity.    Yet they are not bound to do so ; and no one else can.    By taking a benefit under it, they elect not to vacate it on the common principle that any one may dispense with a provision for his own protection ; and it follows, not only that it is merely voidable even by them, but that they are presumed to assent to it till the contrary is made known.    When a trust which is defeasible at the option of those who will not speak out, is cast upon trustees, what are they to do ?    The creditors, or their representatives, are quiescent ; the effects may be lost if they

are not collected, or they may perish on hand if they are not disposed of; interest is accumulating: and to save even a spar from the wreck, it is necessary that something be promptly done. But who is to do it? The creditors will not; and the trustees are not to lie back in expectation of a disaffirmance which may never come; consequently, while they are suffered to act for the common good, their acts necessarily bind every interest involved in it. Their unopposed sale of the effects, therefore, passes the title, legal and equitable; and the purchaser holds it free from danger of a disaffirmance of it thereafter.

There was therefore no want of power to sell; and if the defendant was a *bonâ fide* purchaser for value, his title is incontestable. The existence of *mala fides* is not pretended, and the question has regard to the consideration. The receipt at the foot of the conveyance is certainly not evidence of payment; but it appears that though the vendors suffered the price to remain in the vendee's hands, they charged themselves with it, and took credit for so much received by him in payment of his claims on the fund. By that operation the debts satisfied by it were extinguished and gone; for nothing is more true than that a thing taken in satisfaction of a debt, is purchased for value. The debt was released, as regards the debtor and his assignees under the deed of trust; and why it should not be regarded as released in respect to the assignee in insolvency, it is impossible to see. If he could undo a *bonâ fide* transaction and remit the parties to their former rights in one case, he could do it in every case, and disaffirm all that had been done with the acquiescence of those he represents. Though the price of the property did not actually pass, it did so potentially; for as the trustees charged themselves with it, and paid the preferred creditors their dividends of it, the fund was proportionately increased by it; and as the result would have been the same, the case would have been no better for the purchaser, had he paid with one hand and received with the other. There was, therefore, an indissoluble purchase for a valuable consideration effectually paid; and for that reason the decision is sustained.

But the plaintiff did not attempt to dissolve it. On the contrary, he demanded and received the unadministered part of the fund, increased by the price of the property taken in payment; and had not the inactivity of the creditors already validated the sale, that unmistakeable act of positive affirmance would itself have done it. In Smith *v.* Hodson, 4 T. R. 211, it was ruled that though assignees

in bankruptcy disaffirm a fraudulent delivery of the bankrupt's goods when they sue for them in trover, they affirm it when they sue for the price of them in assumpsit, insomuch that they let in the creditor to set off his debt: and the same thing was ruled in almost so many words in Brewer *v.* Sparrow, 7 B. & C. 310. Those cases were determined on the familiar common-law principle that a party shall not be permitted to claim in repugnant rights; and I cite them in preference, not because they deserve more respect than our own, but because they are nearer to the case in hand in their circumstances. For this reason, also, the direction is sustained.

Judgment affirmed.